Judge Nicholas
d livored the opinion of the court.
Benjamin Sebastian, for love and affection and by wav of advancement to his son William, executed to him a bond for the conveyance of a tract of land. Shortly thereafter William married, having previously exhibited the bond to his wife and her father, who both state that, the proviso made for him by the bond, was an inducement with them for assenting to the marriage. After residing on the land upwards of two years, claiming and using it as his own, and malting some expenditures towards improving it, William Sebastian sold it to Green, and assigned him the bond. About, the same time, but shortly afterwards, Benjamin Sebastian sold and conveyed the land to Anderson, who, at the time of his purchase, had notice either express or constructive of Green’s claim. Anderson brought an action of ejectment and recovered judgment against Green, who then filed his bill enjoining judgment. On final hearing, the injunction was perpetuated, and Anderson decreed to release and convey his title to Green. From this decree Anderson appeals.
It is urged in bis behalf: first, That the bond is fraudulent and void as against him, for want of a valuable consideration.
Second: That, for the same reason, the chancellor will not enforce a specific performance of tliebond.
The first point has brought under review, the important and much agitated question, whether, a subsequent sale and conveyance, for valuable consideration, renders a prior voluntary conveyance absolutely null and void, or only affords presumptive evidence of its being fraudulent, subject to being rebutted by counter proof. After an attentive review of all the ante-revolutionary‘decisions in England cm this subject, that were within my reach, and Í *449 have seen nearly all of them, I have come to the conclusion that, according to the weight of those decisions, a voluntary conveyance, as against a sub sequent purchaser, for valuable consideration, is absolutely void. Such is my impression of the decided preponderance of the cases, that way, that I do not feel at liberty to alter such a course of decision, even if I might otherwise be disposed to do so. See Taylor vs. Stile, cited Sugden on Vendors, 464; Roberts on Fraudulent Conv,; Sterry vs. Arden, I John. Chy. 266, and the numerous cases there cited.
We were much pressed in argument with a contrary decision of the Supreme Court of the United States, in an opinion delivered by Chief Justice Marshall, Cathcart vs. Robinson, V Peters 265. It is there held, that according to the weight of anti-revolutionary English decision, the subsequent sale furnished only a strong presumption of fraudulent intent, which threw on the person claiming under a voluntary settlement, the burthen of proving it to have been made in good faith. However high may be the authority of that court, I may be permitted to decline following it on a point like this, where neither argument nor authority is used to sustain its opinion. It is not the wont of the American profession to acquiesce in or adopt the mere rescripts of any court. I think with chancellor Kent, that no one who will attentively examine the cases Referred to by him, can well hesitate as to the correctness .of the conclusión drawn by him, and which I have adopted, that the weight, number and uniformity of the authorities, do very much preponderate in favor thereof. Besides the case of Cathcart vs. Robinson is obnoxious toso much just observation as to the propriety of its determination on the only point presented for decision, that it roust ever remain difficult to maintain for it, its imputed weight and authority.
.Cathcart conveyed to a trustee, by recorded deed, all his property, for the benefit of his wife and children, and among other things, a claim which he had against the United States. He afterwards covenanted, for value, to convey the same claim to Robinson as collateral security, for the performance of an *450 agreement between them. The question was wheiher the court should postpone the transfer to the trustee, and decree satisfaction to Robinson out of that claim. The transaction arose in the District of Columbia, where the court says, the statute against fraudulent conveyances of 21 Eliz. is still in force, and under that statute, the decision professes exchisively to Ire given. Without determining the effeet of recording the'deed on the question of notice, the decree treats'Robinson as a purchaser without notice, and decrees satisfaction to him out of the claim on the government. The statute 21 Elizabeth does not in terms, nor was it ever before construed to embrace personalty or choses in action. On the contrary it has been repeatedly -adjudged that it does not. The original transfer of the claim and subsequent -agreement to assign -it to Robinson, -did not, therefore, present a case arising under that statute, or at all to be controlled by its provisions. There was no case made out to bring it within the operation of the 13 Elizabeth, and give to Robinson the benefit of the attitude of a creditor. And if there had, the decision would still have been unauthorized, either by former adjudications, or the analogies of the law. That statute though much broader than the other, has, almost uniformly and by much the better authorities been held not to embrace choses in action.
A fair purchaser, for valuable consideration, without notice of a prior voluntary conveyance, is a much more meritorious claimant, in the general, than the volunteer; is much better entitled to the regards and protection of the law, and in a question de demmo evitando as between them, the volunteer should suffer. To give efficiency, stability and certainty to the protection afforded the purchaser, Í •thiuk those courts have best pursued the true spirit and policy of the statute, who have declared voluntary conveyances absolutely void as against such purchaser, and not left it to the uncertain and vasoiiiating determinations of courts and juries, to ascertain whether the circumstances of each case were sufficient to repel a mere presumption of fraud. •This construction .given to the statute, with the in *451 tent to afford its beneficial provisions full scope, is not more rigorous or less called for by the interests of society, than the totally vitiating effect which has been imposed upon sales of chattels, where the possession does not accompany the conveyance. The two rules are in perfect consonance and serve to fortify and sustain the policy of each' other. They are alike indispensable to that certain and efficient protection of purchasers and creditors, which it was the intention of the statute to afford. The hardships of mere individual cases, must in all.wise legislation, be comparatively disregarded', in the attaining of great results for the benefit of the whole-community.
But, whilst' 1 admit and acquiesce in the conclusive authority of the ante-revolutronary decisions upon the absolute fraudulency of a voluntary conveyance, as-against a subsequent purchaser without notice, I- by no means feel equally concluded by them and bound to say, that such conveyance is void as against a purchaser with notice. There was. such contrariety and confliclion of decision on this-subject, that we are left, free to take our own course, and I think we should adopt that which sustains the. voluntary conveyance against:a purchaser with notice. The first revolutionary English decisions have repeatedly and conclusively settled it the other way, and 1 could not hut have felt great hesitancy in following my own view of the subject, if many of their own ablest and most distinguished judg: es and jurists, had not expressed unequivocal disap-, probation of the rules as there established. Chancellor Kent has expressed his opinion decidedly inthc same way, though in Sterry vs. Arden he follows the rule as settled in England, See. IX. East 71, IV Bos. and Pull 335; I Fonb. 281; Sug. Vend.'475; XYIII Yesey, 101; II Meri.v.. 123'. Mr. Roberts in his-treatise on fraudulent conveyances, has given an elaborate and most able argument in favor of the rule-as established in England, and has probably exhausted that side of the question. His reasoning, however, is not convincing. It is purely technical and attains its conclusion by a process too refined and artificial for the test of ordinary legal rules. The *452 most of it is based upo» what I conceive to be a misapplication of the principle established in Gooch’s case, V Co. 60, that a purchaser shall avoid a fraudulent conveyance notwithstanding he has notice of it. The statute does not avoid voluntary conveyances, nor declare them fraudulent. They are good between the parties,'arc aided and enforced by courts of justice, are oftentimes just and meritorious, have not necessarily any vice or illcgality intrinsicaliy appértenant to (hem, and are merely rendered the victims of subsequent bona fide purchasers, by means of an artificial rule of legal presumption. The behests of society seem to require that they should be held void, as against a purchaser without notice, but I do not perceive the necessity of carrying this rule of mere judicial creation to the extent of avoiding them in favor of purchasers with notice. The full protection of bona fide purchasers without notice, by no means requires it. Vt ben a rule is prescribed by statute, I can feel the weight of the argument, which urges the enforcement of its letter, even beyond what the mere prevention of the mischief provided against, would seem to require. But I cannot recognize the soundness of the argument, which insists upon a similar extension of a rule of judicial origin. If the rule be, as as it certainly is, one of our own framing or adopting, 1 cannot see why the courts may not so frame and apply it as to pi event it from defeating its own ends. It was framed in aid of the statute to protect innocent and bona fide purchasers, it should not be extended to the protection of mala fide purchasers with notice. To do so would render the statute an instrument in the accomplishment of fraud.
The statute had a two fold object, the protection of innocent purchasers and the punishment of fraudulent vendees. YV here there are circumstances of intrinsic fraud in the transaction, the vendee must be a participator in the fraud, and it maj he well, as in Gooch’s case, to let the statute operate full out to its very letter, avoiding the fraudulent conveyance, even though the purchaser had notice. But the fraud in voluntary conveyance , most times consists in mere legal artificial presumption, without any *453 necfessary intendment of participation in if, on the part of the vendee. To destroy his couveyaixe in favor of a purchaser with notice, would not only reward tiic vendor on whom the whole imputation rests, and thereby hold out an inducement for the violation of his own solemn engagements, but, it would also encourage on the part of the purchaser, “a breach of that good faith, which is morally due to the fair claims and interests of others.”
The registering acts of England, expressly declare deeds not registered, fraudulent and void, against subsequent purchasers. Yet the courts of that country, looking to the intent of the act, have determined that a purchaser with notice of an unregistered deed, was not within its protection. This seems to me to have a strong bearing on the point under consideration, though it is not noticed in any of the various discussions of the subject that l have met with. The language of the two acts is equally denunciatory and unqualified. It would seem, therefore, from analogy, as there is no just imputation of fraud against the alienee of a voluntary conveyance, that if the statute had expressly declared voluntary conveyances void, as against subsequent purchasers, the courts should have construed it to mean purchasers without notice, and not have extended its nullifying effects in favor of purchasers with notice. Every reason, which justifies the one course of decision, would seem equally to authorize and require the other. Much rather, therefore, should such be the decision, when it is admitted, that voluntary conveyances do not come within the letter of the act, but are only brought within it, by a rule of construction. In fine, l deem a purchaser with notice, not within the spirit and protection of the act, and that a voluntary conveyance should not be avoided for his benefit.
The Chief Justice and Judge Underwood, not deeming it necessary to decide in this case, the important question noticed in the foregoing view, forbear to express any opinion upon it; they will not, therefore, intimate either concurrence in, or dissent, but will reserve an expression of their opinion, until a case shall occur, requiring a direct decision of the point, one way or the other.
In can-úileralion of love and iiffoction and for advancement of •his 5011, tho •i'll ther executes tn his son a bond for the eonveyisnceofa tract of land, the son marries, then sells the Jnr.d and íipsi«¡tis the bond to his vendee, and after thia, the lather sells and conveys the land For valuable Consideration to a pi rson who had notice that tho son had assigned the bund: decided, that the marriage of the son and■ the assignment of the bond, previous to the sale and convoy-an co made by the father for Valuable coi - side-ration, rescues the bond and assignment from all previous liability to he avoided by the purchaser from the father for valuable consideration-.
But, there is another view of the case, in which we all concur, that will result equally unfavorably for Anderson’s claim.
It is the effect given by us, to the marriage of William Sebastian, after the execution of the bond, and under the circumstances mentioned, and to the sale of the land made by him to Green. In our estimation, they so far supplied a valuable and valid consideration to the transaction, as rescued it from any previous liability to be avoided by the after purchase of Anderson.
In the leading case of Prodgers vs. Langham, I Sid. 133, it was determined, that on the marriage of a daughter, who was a voluntary alienee of the father, the conveyance ceased to lie voluntary, became supported by a valuable consideration, and was unimpeachable by a subsequent purchaser from tho father. A similar determination on the same point was made in Sterry vs. Arden, before cited.
It is said, I Mad. Chy. 272, if a man makes a voluntary conveyance of land, and tiie alienee sells the same for valuable consideration, the alienor is bound.So on an appointment, he who pays a consideration to the voluntary appointee, may constructively be. held in the same situation, as if he had in the first instance paid it to him by whom the estate was granted.
So also, I Fonblan, 280, though a conveyance be covinous in its creation, it may acquire validity by subsequent matter, as where land conveyed, be after-wards aliened or settled for valuable consideration. See also, Sugden on Vend. 471.
The second ground of objection to the decree has no legal foundation. It is in the general true, that, the chancellor will not enforce a mere voluntary agreement; but, it was decided by this court in the case of McIntire vs. Hughes, IV Bibb, 186, that a voluntary bond from father to son, for the conveyance of land, would be specifically enforced. Besides the very satisfactory reasoning of that case, it is sustained by most abundant authority. Newland on Con. 69; I Fon. 348; Mynturn vs. Seymore, IV John Chy. 500, and authorities cited.
Monroe and Benny, for Pirtlc, for appellees. appellant; Crittenden and
The decree must be affirmed with costs,.